WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

In re VistaCare, Inc.,                )
Derivative Litigation,                )
_____       )
                                      )    No. CIV 04-1739-PHX RCB
George Palmetto, et al.,              )
                                      )        O R D E R
                Plaintiffs,           )
        v.                            )
                                      )
David A. Freeman, et al.,             )
                                      )
                Defendants.           )
_____       )

**I. Introduction**

On August 20, 2004, Plaintiffs George Palmetto, et al., filed

a derivative lawsuit against Defendants David A. Freeman, et al.,

seeking to stand in the shoes of VistaCare, Inc. ("VistaCare") and

bringing claims held by VistaCare.  Complt. (doc. 1).  On November

23, 2005, Defendants Freeman, Perry G. Fine, William J. McBride,

Pete A. Klisares, David W. Faeder, and Geneva B. Johnson

("Individual Defendants") filed a motion to dismiss the case due to

a lack of personal jurisdiction.  Mot. Lack of P. Jurisdiction

(doc. 17).  Thereafter, all the defendants filed a motion to

1  dismiss Plaintiffs' consolidated derivative complaint pursuant to

2  Federal Rule of Civil Procedure 12(b)(6).  Mot. (doc. 20).[1]

3       On November 30, 2005, and upon stipulation by the parties, the

4  Court ordered Defendants' motion to dismiss for lack of personal

5  jurisdiction stayed pending resolution of Defendants' motion to

6  dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  Order (doc. 26).  In

7  addition, the Court determined a specific briefing schedule for

8  Defendants' motion to dismiss for lack of personal jurisdiction,

9  should Defendants' motion to dismiss pursuant to Fed.R.Civ.P.

10 12(b)(6) be denied in whole or in part.  Id.  Following the Court's

11 order, Defendants' motion to dismiss pursuant to Fed.R.Civ.P.

12 12(b)(6) was fully briefed on February 9, 2006.  Reply (doc. 39).[2]

13 Having carefully considered the arguments presented by the parties,

14 the court now rules.

## II. Background Facts

16      VistaCare is one of the leading providers of hospice services

17 in the United States.  VistaCare receives most of its revenue from

18 Medicare, whose payments are subject to an annual "cap."

19 Generally, the total cap for any specific site is calculated by

20 multiplying the fiscal-year per-patient cap amount by the number of

21 first-time, Medicare-eligible patients enrolled during the cap

---

[1] In the case at bar, the defendants are Richard R. Slager, Mark E. Liebner, Pete A. Klisares, David W. Faeder, Perry G. Fine, Ronald A. Matricaria, William J. McBride, Geneva B. Johnson, and David A. Freeman ("Defendants").  All of the defendants, except for Liebner and Freeman, are the "Director Defendants."  The nominal defendant is VistaCare, Inc. ("VistaCare").

[2] In their Reply, Defendants made a request for oral argument on this matter. (doc. 39). Such request is untimely, pursuant to Local Rule 7.2(f).  Thus, the Court shall deny Defendants' request.

1  year, and then adjusting for several factors.  If Medicare pays for

2  services during the fiscal years beyond the cap amount, it may seek

3  repayment of the excess.

4      From about November 2003 to August 2004, VistaCare

5  consistently reported financial growth.  However, on August 5,

6  2004, VistaCare issued a press release announcing its second

7  quarter financial results for the quarter ending June 30, 2004.  In

8  that release, VistaCare revised downward its financial projections

9  for the remainder of 2004, in part because it increased reserves

10 against future Medicare cap reimbursements.  By the following

11 day's closing, the price of VistaCare's stock decreased by 18%.

12 Thereafter, a press release dated December 6, 2004, revealed that

13 VistaCare faced the accrual of an additional $7.8 million for the

14 Medicare cap, resulting in a net loss for the quarter of $6.2

15 million.  In response to these actions, Plaintiffs filed this

16 litigation.

17 **III. Standard of Review**

18     A Rule 12(b)(6) motion to dismiss is proper where there is

19 either a "lack of a cognizable legal theory" or the absence of

20 sufficient facts alleged to support a cognizable legal theory.

21 Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

22 1988).  Such a motion may be granted only if "it appears beyond

23 doubt that the plaintiff can prove no set of facts in support of

24 his claim which would entitle him to relief."  Conley v. Gibson,

25 355 U.S. 41, 45-46 (1957).

26     In deciding such a motion, all material allegations of
     the complaint are accepted as true, as well as all
27     reasonable inferences to be drawn from them...Dismissal
     is proper only where there is no cognizable legal theory
28     or an absence of sufficient facts alleged to support a

1   cognizable legal theory.

2   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (internal

3   citations omitted).  The parties agree that Delaware law applies in

4   this matter.  Mot. (doc. 20) at 2-3; Resp. (doc. 32) at 4.

5   **IV. Discussion** - **Demand Futility**

6   The decision to bring a lawsuit in the name of a corporation

7   is a responsibility that rests with the board of directors.  See

8   Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990).  If the

9   majority of the board can weigh the pros and cons of bringing suit

10  without being controlled by outside forces, the board is entitled

11  to decide whether to initiate a lawsuit.  Id. at 773-74.  This

12  holds true even if meritorious claims are made in a demand; a board

13  may forego litigation if, in exercising its business judgment, the

14  board decides that it is best for the company not to do so.  Id.

15  at 777.  Because derivative suits brought by shareholders

16  "challenge the propriety of decisions made by directors pursuant to

17  their managerial authority, [courts] have repeatedly held that the

18  stockholder plaintiffs must overcome the powerful presumptions of

19  the business judgment rule before they will be permitted to pursue

20  the derivative claim."  Rales v. Blasband, 634 A.2d 927, 933 (Del.

21  1993).

22  Delaware Chancery Court Rule 23.1 ("Rule 23.1") provides that

23  a derivative complaint must "allege with particularity the efforts,

24  if any, made by the plaintiff to obtain the action the plaintiff

25  desires from the directors...and the reasons for the plaintiff's

26  failure to obtain the action or for not making the effort."  Here,

27  Plaintiffs concede that they never made a demand on VistaCare's

28  board, claiming that to do so would have been "futile."  Complt.

1   (doc. 1) at ¶ 61.   Thus, Plaintiffs must plead with particularity

2   facts sufficient to support their futility assertion.   See Aronson

3   v. Lewis, 473 A.2d 805, 815 (Del. 1984), overruled on other grounds

4   by Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000).   Demand futility

5   is judged at the time the plaintiff filed the complaint.   See

6   Harris v. Carter, 582 A.2d 222, 229-30 (Del. Ch. 1990).

7       The burden to establish demand futility is "more onerous than

8   that required to withstand a Rule 12(b)(6) motion to dismiss."

9   Levine v. Smith, 591 A.2d 194, 207 (Del. 1991), overruled on other

10  grounds by Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000).   "What

11  the pleader must set forth are particularized factual statements

12  that are essential to the claim."   Brehm, 746 A.2d at 254.

13  Conclusory language "does not comply with these fundamental

14  pleading mandates."   Id.   However, a plaintiff is not required to

15  plead evidence inasmuch as discovery is foreclosed.   See Levine,

16  591 A.2d at 207.   In any event, if a plaintiff fails to meet these

17  stringent requirements, the complaint must be dismissed even if it

18  pleads otherwise meritorious claims.   See Kaufman v. Belmont, 479

19  A.2d 282, 286 (Del. Ch. 1984).

20      Actions that may be challenged by a derivative lawsuit fall

21  into one of two categories: (1) an affirmative act undertaken by

22  the directors; or (2) no specific board action is challenged.   See

23  Rales, 634 A.2d at 933-34.   Where a shareholder, such as in the

24  case at bar, does not challenge a specific action or decision of

25  the board, demand may be excused where the complaint raises a

26  reasonable doubt that a majority of the board's directors are

27  disinterested and independent.   Id. at 930.   Under this test, a

28  shareholder establishes that demand would have been futile only if

1 a majority of the board: (1) faces a substantial likelihood of
2 liability under the specific facts alleged in the derivative
3 complaint; or (2) is controlled by one or more directors who face a
4 substantial likelihood of liability.  Id. at 936-37.

5      In the case at bar, Plaintiffs allege that Defendants caused
6 VistaCare's shares to trade at artificially inflated levels through
7 the issuance of false and misleading statements, and failed to
8 supervise VistaCare so as to properly reserve for the company's
9 Medicare reimbursements.  Complt. (doc. 1) at ¶¶ 8-10.  The parties
10 do not dispute that Plaintiffs are not challenging an affirmative
11 act by the board, and, thus, must establish demand futility under
12 the test set forth in Rales.

13      **A. Substantial Likelihood of Liability**

14      In their motion to dismiss, Defendants assert that Plaintiffs
15 have failed to plead particularized facts to create a reasonable
16 doubt that four VistaCare directors – a majority – could
17 independently consider a litigation demand.  Mot. (doc. 20) at 5.
18 A director is not independent only if particularly pled facts
19 demonstrate that "a corporate decision [on the demand] will have a
20 materially detrimental impact on a director, but not on the
21 corporation and the stockholders." Rales, 634 A.2d at 936.  The
22 key inquiry "is whether the plaintiffs have pled facts that show
23 that...[the] directors face a sufficiently substantial threat of
24 personal liability to compromise their ability to act impartially
25 on a demand." Guttman v. Huang, 823 A.2d 492, 503 (Del. Ch. 2003).
26 To plead a substantial threat of personal liability, Plaintiffs
27 must set forth particularized facts showing that a defendant
28 either: (1) "personally profited from stock sales while in knowing

- 6 -

possession of material, non-public information[;]" or (2)
"committed a non-exculpated breach of fiduciary duty by failing to
oversee the company's compliance with legally mandated accounting
and disclosure standards."[3]  <u>Guttman</u>, 823 A.2d at 503.  Here,
Defendants assert that Plaintiffs do not allege a single
particularized fact that supports either of these two
possibilities.  Mot. (doc. 20) at 6.

First, Defendants argue that Plaintiffs' insider trading
allegations fail to establish the necessary particularized facts
required to show demand futility.  <u>Id.</u> at 6-7.  "[P]laintiffs
generally proffer that two directors, Slager and Fine, purportedly
engaged in 'illegal insider trading.'"[4]  <u>Id.</u> at 6.  Specifically,
Defendants assert that Plaintiffs fail to raise any facts regarding
information that the directors acquired and knew showing that the
stock sales were "entered into and completed on the basis of, and
because of adverse material non-public information."  <u>Id.</u>  "Given
that Slager and Fine do not face personal liability for insider
trading, it cannot be said that they were unable to consider a
litigation demand."  <u>Id.</u> at 7.

Moreover, Defendants note, and Plaintiffs do not dispute in
their response, that all of the stock sales made by Slager and Fine
were non-discretionary sales made pursuant to a "10b5-1 stock

---

[3] This type of claim is also known as a <u>Caremark</u> claim, named in
reference to <u>In re Caremark Int'l Derivative Litig.</u>, 698 A.2d 959,
967 (Del. Ch. 1996).

[4] Defendants note that the Complaint identifies a third director
who sold stock – Freeman – but he was not a member of VistaCare's
board when Plaintiffs filed this action.  Mot. (doc. 20) at 6.  Thus,
he is not relevant to the demand futility analysis.  <u>See</u> <u>Harris</u>, 582
A.2d at 230.

trading plan."  Mot. (doc. 20) at 7.  They maintain that under
10b5-1 plans, sellers cannot deviate from the plan by changing the
amount, price or timing of their sale.  17 C.F.R. § 240.10b5-
1(c)(1)(i)(C) (2005).  Accordingly, Defendants argue that the
timing of such trades cannot be deemed suspicious since they
eliminate the ability to time stock sales based upon inside
information.  Mot. (doc. 20) at 7.

     Second, Defendants assert that Plaintiffs have not pled facts
that indicate that a majority of VistaCare's board committed an
actionable breach of fiduciary duty.  Id. at 7-9. Delaware law
limits the fiduciary breaches for which a director may be liable to
a company.  Section 102(b)(7) of the Delaware General Corporation
Law permits shareholders to ratify a charter provision insulating
directors from liability for all fiduciary breaches that result
from mistake or negligence.  8 DEL. C. § 102(b)(7).  The parties do
not dispute that VistaCare's shareholders have approved such a
provision.  Mot. (doc. 20) at 7; Resp. (doc. 32) at 17.  Hence,
only fiduciary breaches involving intentional misconduct, bad faith
or disloyalty can form the basis of a cause of action against the
directors.  See Malpiede v. Townson, 780 A.2d 1075, 1094-95 (Del.
2001).  In order to show the requisite bad faith, a plaintiff must
demonstrate that a defendant "allowed a situation to develop and
continue which exposed the corporation to enormous [] liability and
that in so doing they violated a duty to be active monitors of
corporate performance."  Caremark, 698 A.2d at 967.

     Here, Defendants contend that the core of Plaintiffs'
allegations is that the directors permitted VistaCare to wrongly
predict the amount of Medicare cap reimbursements it would owe.

Mot. (doc. 20) at 7-8.  However, they maintain that Plaintiffs merely assert without factual support that Defendants knowingly participated in the alleged wrongdoing.  Id. at 8.  "[P]laintiffs do not allege how any director was involved in VistaCare's efforts to estimate reserves for future Medicare cap payments. Plaintiffs do not identify a single corporate document, conversation, or board meeting that purportedly appraised any board member, much less a majority, that additional reserves for future Medicare cap assessments were necessary."  Id.  For these reasons, Defendants argue that none of VistaCare's directors face a substantial likelihood of being found liable to VistaCare for intentionally breaching their fiduciary duty.  Id. at 9.

Third, Defendants assert that Plaintiffs' remaining arguments for demand futility are generalized statements applicable to any director of a public company and, thus, are irrelevant.  Mot. (doc. 20) at 9.  Specifically, Defendants assert that Plaintiffs' claims that (1) the Director Defendants engaged in the alleged wrongdoing to "protect and enhance" their positions, and (2) that demand is futile because Defendants would have to "sue themselves," resulting in a loss of insurance and/or personal liability in excess of insurance coverage limits, are arguments that have been consistently rejected by courts.  Id. (citing Growbow v. Perot, 539 A.2d 180, 188 (Del. 1988); Lewis v. Straetz, 1986 WL 2252, at *4-*5 (Del. Ch. Feb. 12, 1986); Brehm, 746 A.2d at 257 n.34; Aronson, 473 A.2d at 818; Decker v. Clausen, No. Civ. A. Nos. 10.684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)).  Defendants maintain that such "boilerplate allegations" do not sufficiently plead demand futility.  Id.

1    In response to Defendants' arguments, Plaintiffs assert that

2  they have met their burden for demonstrating demand futility in

3  this case.  Resp. (doc. 32) at 5.  "[P]laintiffs' burden here is

4  not to prove wrongdoing or demonstrate that they are likely to win

5  on the merits; rather, plaintiffs' burden at the pleading stage is

6  only to allege particularized facts which, if true, would give a

7  reasonable shareholder reason to doubt the ability of four of the

8  seven members of the VistaCare Board to consider a demand."  _Id._

9    First, Plaintiffs maintain that Defendants Slager and Fine are

10 directly interested in the insider trading allegations in the

11 Complaint because each of them received a personal financial

12 benefit from those transactions.  _Id._ at 7.  Moreover, Plaintiffs

13 allege that Slager and Fine knowingly traded large percentages of

14 their holdings in VistaCare while in possession of undisclosed

15 material adverse information, in order to personally profit from

16 the artificially inflated price of the company's stock.  _Id._ at 7-

17 8.  Plaintiffs note that in the Complaint, they stated:

18        As a result of their access to and review of
          internal corporate documents; conversations and
19        connections with other corporate officers,
          employees and directors; and attendance at
20        management and Board meetings, each of the
          defendants knew the adverse non-public information
21        regarding the improper accounting. While in
          possession of this material adverse non-public
22        information regarding the Company...

23        Slager sold 116,000 shares of VistaCare stock for
          proceeds of $3,949,288.67, which represents more
24        than ten times the total compensation paid to
          Slager during FY:03. ...he sold 36% of his total
25        holdings during the Relevant Period; and

26        Fine sold 41,500 shares of VistaCare stock for
          proceeds of $1,125,012.60. ...he sold 57% of his
27        total holdings during the Relevant Period. Because
          these defendants received personal financial
28        benefits from the challenged insider trading

1            transactions, these defendants are interested and
           demand upon them is futile.

2

3 Complt. (doc. 1) at ¶ 67(a)(i)-(ii).  Under "the standard set

4 forth in" <u>Zimmerman v. Braddock</u>, No. 18473-NC, 2005 WL 2266566, at

5 *8 (Del. Ch. Sept. 8, 2005), Plaintiffs argue that they have

6 adequately alleged that Slager and Fine had knowledge of material

7 information that formed the basis of their trades, subjecting them

8 to a "substantial likelihood of liability and rendering them

9 incapable of impartially evaluating a demand to commence and

10 vigorously prosecute this action."  Resp. (doc. 32) at 8.

11       Second, Plaintiffs argue that Defendants McBride, Klisares

12 and Matricaria, all members of the Audit Committee, lack

13 independence and are interested because they face a substantial

14 likelihood of liability for their involvement in the dissemination

15 of false and misleading statements.  <u>Id.</u>  Plaintiffs assert that

16 there is "no doubt" that the press releases, Forms 10-Q and Form

17 10-K issued during the relevant period were false and misleading.

18 <u>Id.</u>  They base this assertion on the Honorable Frederick J.

19 Martone's finding that "similar facts alleged by plaintiffs in a

20 related class action demonstrate the falsity of these statements."

21 <u>Id.</u> (citing <u>In re VistaCare Inc. Sec. Litig.</u>, No. 04-CV-1661-PHX-

22 FJM, Order at 3 (D. Ariz. Aug. 18, 2005)).

23       Plaintiffs note that the Audit Committee Charter defines the

24 Audit Committee's responsibilities as:

25            ...assist[ing] the Board of Directors in
           fulfilling its responsibility for oversight of the

26            quality and integrity of the accounting, auditing,
           and reporting practices of the company, and such

27            other duties as directed by the Board.  The
           Committee's role includes a particular focus on

28            the qualitative aspects of financial reporting to

1    shareholders, and on the company's processes to
     manage business and financial risk, and for
2    compliance with significant applicable legal,
     ethical, and regulatory requirements.
3

4   Complt. (doc. 1) at ¶ 67(c).  Plaintiffs maintain that to

5   accomplish this role, the Charter expressly requires the Audit

6   Committee to evaluate the "[s]tatus of significant accounting

7   estimates and judgments (e.g., reserves) and special issues (e.g.,

8   major transactions, related party transactions, accounting

9   changes)," to conduct a "[r]eview of the Annual Report on Form 10-

10  K and proxy statement, including MD&A," to "[d]iscuss earnings

11  press releases and other financial information and earnings

12  guidance provided to analysts and rating agencies," to conduct a

13  "[r]eview of Quarterly Reports on Form 10-Q, including MD&A," and

14  to conduct an "[a]ssessment of internal control" at least

15  annually.  Id.

16      Plaintiffs argue that "[d]espite their duties to ensure that

17  VistaCare issued proper financial statements and guidance and

18  their personal review of those statements, the members of the

19  Audit Committee allowed the false press releases and financial

20  statements and even recommended to the Board to include the false

21  financial statements in VistaCare's Form 10-K filed with the SEC

22  for the Fiscal Year 2003."  Resp. (doc. 32) at 9-10.  Thus, they

23  assert that any demand on the members of the Audit Committee would

24  have been futile, because the members were actively involved in

25  the review and dissemination of all of the statements Plaintiffs

26  allege were false and misleading.  Id. at 10.

27  . . .

28

**B. Control of a Majority of the Board by an Interested Director**

Defendants contend that their motion to dismiss should be granted because Plaintiffs have failed to show that any interested director controlled a majority of the directors on the VistaCare board.  Mot. (doc. 20) at 10.   At the outset, Defendants maintain that because Plaintiffs have not shown that any director lacks independence, the issue of control is irrelevant.  Id.  Moreover, Defendants argue that Plaintiffs have not produced any facts that establish that any director controlled or "dominated" the board. Id.  They contend that any arguments asserting that such domination existed because (1) the directors, who were members of the Nominating and Corporate Governance Committee, "singularly control the other defendants' awards and positions[,]" or (2) the directors held professional relationships with each other, are irrelevant.  Id.  Defendants argue that Plaintiffs do not, and cannot, allege any facts demonstrating that any interested director controlled other directors.  Id. at 11.

In contrast, Plaintiffs again assert that they have met their burden for demonstrating demand futility in this case.  Resp. (doc. 32) at 5.  First, Plaintiffs argue that Defendant Slager is controlled by the members of the Compensation Committee due to his employment as President, Chairman and Chief Operating Officer ("CEO") of VistaCare.  Id. at 6.  They contend that Slager cannot be independent because his principal profession is his employment with VistaCare, pursuant to which he receives "$375,798 in salary alone."  Id.  Hence, Plaintiffs assert that Slager is not independent from Defendants Johnson, Matricaria and Klisares,

1  because they comprise the Compensation Committee and are

2  responsible for evaluating and determining the compensation of the

3  CEO.  Id.  "Because of his status as an inside director, and the

4  concomitant substantial compensation he receives, defendant Slager

5  could not consider a demand adverse to the Director Defendants

6  serving on the Compensation Committee."  Id. (citing the following

7  in support of their argument: Rales, 634 A.2d at 937; Steiner v.

8  Meyerson, No. 13139, 1995 WL 441999, at *10 (Del. Ch. July 19,

9  1995); In re The Student Loan Corp. Derivative Litig., No. 17799,

10  2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002)).

11      Second, Plaintiffs assert that Defendants Slager, Klisares

12  and Faeder lack independence due to their "entangling

13  relationships."  Resp. (doc. 32) at 6.  Plaintiffs note that

14  Slager, Klisares and Faeder are "long-time business associates,

15  all involved in the start-up and/or development of Karrington

16  Health, Inc. ("Karrington"), which in 1998, was acquired by

17  Sunrise Assisted Living, Inc."  Id. at 11.  Slager was the

18  founder, Chairman and CEO of Karrington, and Klisares was COO and

19  President of Karrington.  Id.  In addition, Plaintiffs note that

20  Slager is the Executive Vice President and a director of Sunrise,

21  and that Klisares is also a director of Sunrise.  Id.  "As a

22  result, these entangled relationships create strong incentives for

23  these defendants to avoid suing each other, thereby showing demand

24  would have been futile."  Id.

25  **V. Analysis - Demand Futility**

26      **A. Alleged Insider Trades by Slager and Fine**

27      In order to satisfactorily show that Slager and Fine face a

28  "substantial likelihood" of liability for insider trading,

1   Plaintiffs must plead facts that support the conclusion "that each
2   sale by each individual defendant was entered into and completed
3   on the basis of, and because of adverse material non-public
4   information." Guttman, 823 A.2d at 505 (citing Stepak v. Ross,
5   1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985)). Plaintiffs, in
6   their response, assert that under "the standard set forth in"
7   Zimmerman v. Braddock, No. 18473-NC, 2005 WL 2266566, at *8 (Del.
8   Ch. Sept. 8, 2005), they have adequately alleged that Slager and
9   Fine had knowledge of material information that formed the basis
10  of their trades, subjecting them to a "substantial likelihood of
11  liability." The Court, however, finds this statement misplaced,
12  as the "standard" utilized in Zimmerman is the same as that
13  defined in Guttman, holding that "[t]o proceed on an insider
14  selling claim, a plaintiff must show 'that each sale by each
15  individual defendant was entered into and completed on the basis
16  of, and because of, adverse material non-public information.'"
17  Zimmerman, No. 18473-NC, 2005 WL 2266566, at *8 (quoting Guttman,
18  823 A.2d at 505).

19      The court in Zimmerman noted that the plaintiffs in that
20  matter had adequately pled facts that created a reasonable
21  inference that the specific defendants had "knowledge-directly and
22  by imputation-of [the companies'] problems." Id.  In contrast
23  with the case at bar, the plaintiffs in Zimmerman pled particular
24  facts that indicated that concerns about the companies at issue in
25  the case had been expressed to the defendants and that the
26  defendants had access to "Pricing Reports, Demographic Analyses,
27  Network Operations Center Reports, and Promotion Reconciliation
28  Reports," all of which detailed enough information to reveal the

1    difficulties one of the companies faced.  <u>Id.</u>  Here, Plaintiffs

2    plead no such facts.

3        In the case at bar, Plaintiffs claim that "[a]s a result of

4    their access to and review of internal corporate documents;

5    conversations and connections with other corporate officers,

6    employees and directors; and attendance at management and Board

7    meetings, [Slager and Fine] knew the adverse non-public

8    information regarding the improper accounting."  Complt. (doc. 1)

9    at ¶ 67(a).  Such conclusory statements do not satisfy the strict

10   requirements of Rule 23.1.  Plaintiffs fail to indicate how or in

11   what form the "non-public information regarding the improper

12   accounting" was disclosed to Slager and Fine through any of these

13   listed mechanisms.  Absent from the Complaint are well-pled,

14   particularized facts detailing the specific information that would

15   have come to their attention in their roles at VistaCare, and an

16   indication as to why they would have perceived any accounting

17   irregularities.  In the absence of specific facts that support a

18   rational inference that Slager or Fine had some basis to believe

19   that VistaCare's financial statements were materially misleading

20   in a manner that inflated the company's stock price, the mere fact

21   that two of the directors sold large portions of their stock does

22   not support the conclusion that they face a real threat of

23   liability.  Consequently, the Court concludes that Plaintiffs have

24   failed to plead particular facts that show that Slager and Fine

25   face a "substantial likelihood" of liability for insider trading.

26       **B. The Audit Committee**

27       The Court also does not find that Plaintiffs have

28   successfully pled particular facts that establish their <u>Caremark</u>

claim.   To establish that VistaCare's Audit Committee members are "interested" directors, Plaintiffs must plead facts that show that each member, who was a director, faces a "substantial likelihood" of liability.   "The 'mere threat' of personal liability in the derivative action does not render a director interested; however, a 'substantial likelihood' of personal liability prevents a director from impartially considering a demand."   Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995).

Here, the parties do not dispute that the directors are exempt from liability for violations of their duty of care.   See Mot. (doc. 20) at 7; Resp. (doc. 32) at 17.   Additionally, the parties agree that to show a "'substantial likelihood' of personal liability," Plaintiffs must plead specific facts that implicate breaches of the directors' duties of loyalty and good faith.   Id.; see also Emerald Partners v. Berlin, 726 A.2d 1215, 1227 (Del. 1999).   The Court finds that Plaintiffs have failed to plead such facts.

Here, Plaintiffs basically assert that the Audit Committee, which includes Director Defendants McBride, Klisares and Matricaria, "allowed the false press releases and financial statements and even recommended to the Board to include the false financial statements in VistaCare's Form 10-K filed with the SEC for the Fiscal Year 2003."   Resp. (doc. 32) at 9-10.   They allege that such Director Defendants were "required to take an active role in the review and dissemination of all of [VistaCare's] financial statements and communications concerning [VistaCare's] results, operations and prospects."   Id. at 10.   "By failing to properly carry out their duties as guardians of VistaCare's

1  financial results, [the three Director Defendants] breached their

2  fiduciary duties[.]" Id.  Such conclusory claims, however, are

3  not sufficient to survive a motion to dismiss.

4       In Guttman, the court considered Caremark claims brought by

5  shareholders against directors of a specific corporation.  823

6  A.2d at 499, 505-07.  The plaintiffs in Guttman asserted demand

7  futility because, among other things, the defendant directors

8  "failed to oversee the process by which [the corporation] prepared

9  its financial statements so as to ensure that the resulting

10 statements had integrity and met legal standards." Id. at 505.

11 Thus, the plaintiffs argued that the defendant directors faced

12 liability for breaches of their fiduciary duties and, therefore,

13 lacked the ability to act impartially on a demand. Id. at 499.

14 The court, however, concluded that the plaintiffs failed to

15 sufficiently plead particular facts to establish their claims.

16 Id. at 506-08.

> In this case, the plaintiffs have not come close
> to pleading a *Caremark* claim. Their conclusory
> complaint is empty of the kind of fact pleading
> that is critical to a *Caremark* claim, such as
> contentions that the company lacked an audit
> committee, that the company had an audit committee
> that met only sporadically and devoted patently
> inadequate time to its work, or that the audit
> committee had clear notice of serious accounting
> irregularities and simply chose to ignore them or,
> even worse, to encourage their continuation.

23 Id. at 506-07.  The circumstances described in Guttman are on par

24 with those currently before this Court.

25      Here, Plaintiffs do not plead particular facts (1) that

26 indicate how Director Defendants McBride, Klisares and Matricaria

27 were involved or failed "to take an active role" in the review and

28 dissemination of the alleged false statements; (2) that designate

- 18 -

a specific false statement that was reviewed and used by the Audit Committee; or (3) that indicate how and when these Defendant Directors learned that any alleged statement was false.  The fact that Judge Martone concluded that "similar facts" sufficiently demonstrated the falsity of the contested financial statements in order to survive a motion to dismiss is irrelevant to the analysis of whether the particular Director Defendants in this matter are "interested" for purposes of a demand futility analysis.  The mere fact that the documents may have been false is not dispositive on the issue of whether McBride, Klisares and Matricaria face a "substantial likelihood" of liability for breaches of their duties of loyalty or good faith.  The Court finds no factual indication of bad faith on the part of Defendants McBride, Klisares and Matricaria.  Consequently, the Court concludes that Plaintiffs have failed to plead particular facts that show that such Director Defendants face a "substantial likelihood" of liability.

     In light of the fact that the Court finds no Director Defendant to be facing a "substantial likelihood" of liability, the issue of their control over a majority of the VistaCare board is irrelevant and need not be analyzed.  Due to Plaintiffs' failure to show that demand on the VistaCare board was futile, Defendants' motion to dismiss shall be granted.  Consequently, Defendants' arguments regarding Plaintiffs' alleged failure to state a claim in their Complaint also need not be analyzed by the Court.

     Therefore,

     IT IS ORDERED that Defendants' motion to dismiss Plaintiffs' consolidated derivative complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) (doc. 20) is GRANTED.

IT IS FURTHER ORDERED that Individual Defendants' motion to dismiss for lack of jurisdiction (doc. 17) is DENIED as moot.

DATED this 29th day of August, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record